UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-

HEIDI K. ERICKSON
    Plaintiff

04 · 10629 DPW

VS.

VERIFIED COMPLAINT

Referred to mJ JLAlexander

DANIEL WUENSCHEL, MICHAEL JOHNSTON and
CAMBRIDGE HOUSING AUTHORITY;
KAREN KOLLER, CARL ALLEN, WENDY AMANTA and
RESOURCES FOR COMMUNITIES AND PEOPLE
    Defendants

## PARTIES

1. The Plaintiff Ms. Heidi K. Erickson hereinafter "Erickson" is a citizen of the United States, a resident of the State of Massachusetts and current fully qualified participant of the United States Department of Housing and Urban Development (HUD) Housing Choice Voucher Program under Section-8 of the U.S. Housing Acting of 1937 (42 U.S.C. 1437 et seq.) seeks redress to the wrongful actions and inactions of Defendant and also a emergency orders, and a preliminary injunction (with oral hearing) to prevent her voucher from expiring.

2. The Defendant Daniel Wuenschel hereinafter "Wuenschel" Executive Director of the Cambridge Housing Authority hereinafter "CHA" duly appointed, is being sued in his personal and professional capacity, at all times material herein, was charged with the ultimate responsibility, care and supervision of Plaintiff's Section-8 participation, knew and/or should have known that his actions and/or the actions of his employees and agents to hold against the right of Erickson, done knowingly and willfully to deprive Erickson her established constitutional protections, and the failure of the "CHA" to comply with the intentions of Congress, federal laws and regulations as required by HUD and the laws of the Commonwealth of Massachusetts.

3. On information and belief, Wuenschel is personally and professionally, and at all times material herein, responsible for the ultimate decision to train, and supervise his employees and agents and at all time material herein capriciously, arbitrarily, wrongly, intentionally, negligently, discriminately and maliciously deprived Erickson her rights.

4. The Defendant Michael Johnston hereinafter "Johnston" Director of Leasing within the "CHA" duly appointed, is being sued in his individual and professional capacity, at all times material herein, was charged with the responsibility, care and supervision of Plaintiff's Section-8 participation, knew and/or should have known that his actions and/or the actions of his employees and agents to hold against the right of Erickson, done knowingly, willfully, arbitrarily and capriciously to deprive Erickson her established constitutional protections, and the failure of the "CHA" to comply with the intentions of Congress, federal laws and regulations as required by HUD.

5. On information and belief Johnston committed intentional malice, slander, tortuous and negligent wrongs against and upon Erickson.

6. The Defendant Cambridge Housing Authority herein "CHA" duly recognized Public Housing Authority pursuant to 42 U.S.C. 1437 section 8 of the U.S. Housing Act of 1937 and those required by U.S. Department of Housing and Urban Development ("HUD") and responsible corporate entity in the administration of HUD programs and interests pursuant to the code of federal regulations 24 CFR 982.51, is being sued in its corporate and individual capacity as a Public Housing entity, at all times material herein, was charged with the ultimate responsibility, care and supervision of Plaintiff's Section-8 participation, knew and/or should have known that the actions and/or the actions of its employees and agents to hold against the right of Erickson, done knowingly, willfully arbitrarily and capriciously to deprive Erickson her established constitutional protections, and the failure of the Cambridge Housing Authority to comply with the intentions of Congress, federal laws and regulations as required by HUD.

7. The Defendant Karen Koller hereinafter "Koller" Executive Director of the Resources for Communities And People (RCAP Solutions and previously known as Rural Housing Initiative 'RHI') hereinafter "RCAP" duly appointed, is being sued in her individual and professional capacity, at all times material herein, was charged with the responsibility, care and supervision of HUD interests including Plaintiff's Section-8 participation, knew and/or should have known that her actions and/or the actions of her employees and agents to hold against the right of Erickson, done knowingly, discriminately, arbitrarily, capriciously and willfully to deprive Erickson her established constitutional protections, and the failure of "RCAP" to comply with the intentions of Congress, federal laws and regulations as required by HUD and the Massachusetts Department of Housing and Community Development hereinafter "DHCD".

8. On information and belief, Koller is personally and professionally, and at all times material herein, responsible for the ultimate decision to train, and supervise her employees and at all time material herein wrongly, arbitrarily, capriciously, intentionally, negligently, discriminately and maliciously deprived Erickson her rights.

9. The Defendant Carl Allen hereinafter "Allen" Director of Rental Assistance Program under the auspices of "RCAP" duly appointed, is being sued in his individual and professional capacity, at all times material herein, was charged with the responsibility, care and supervision of HUD interests including Plaintiff's Section-8 participation, knew and/or should have known that her actions and/or the actions of his employees and agents to hold against the right of Erickson, done knowingly, arbitrarily, capriciously, and willfully to deprive Erickson her established constitutional protections, and the failure of "RCAP" to comply with the intentions of Congress, federal laws and regulations as required by HUD and "DHCD" and the laws of the Commonwealth.

10. The Defendant Wendy Amenta hereinafter "Amenta" Program Representative under the auspices of "RCAP" duly appointed, is being sued in his individual and professional capacity, at all times material herein, was charged with the responsibility, care and supervision of HUD interests including Plaintiff's Section-8 participation, knew and/or should have known that her actions and/or the actions of his employees and agents to hold against the right of Erickson, done knowingly, discriminately, arbitrarily, capriciously, and willfully to deprive Erickson her established constitutional protections, and the failure of "RCAP" to comply with the intentions of Congress, federal laws and regulations as required by HUD and those established by "DHCD".

11. On information and belief, Amenta committed intentional malice, slander, tortuous and negligent wrongs against and upon Erickson.

12. The Defendant Resources for Communities And People herein "RCAP" duly recognized Public Housing Authority pursuant to 42 U.S.C. 1437 section 8 of the U.S. Housing Act of 1937 and those required by U.S. Department of Housing and Urban Development ("HUD") and responsible corporate entity in the administration of HUD programs and interests pursuant to the code of federal regulations, is being sued in its corporate and individual capacity as a Public Housing entity, at all times material herein, was charged with the responsibility to comply to all federal and local laws, and those intentions of Congress and of HUD and to facilitate Plaintiff's Section-8 participation, knew and/or should have known that the actions and/or the actions of its employees and agents to hold against the right of Erickson, done knowingly, discriminately, arbitrarily, capriciously and willfully to deprive Erickson her established constitutional protections, and of the laws in the Commonwealth of Massachusetts was wrong.

## JURISDICTION

This action arises under the Fourteenth Amendments to the United States Constitution, and the Civil Rights Act of 1870, 42 USC sections 1983 et seq. and section 1985; 24 CFR 982.51, 982.52, 982.5, 982.54, 982.555, 982.303; 42 USC 1437 et seq. (the Housing Act of 1937); 42 USC section18241 (the Americans with Disabilities Act) and those related to Article 14 of the Massachusetts Constitution and those that arise under the Massachusetts General Law Ch. 151B sec 10 and other as it relates to discrimination in housing and in general.

This Honorable Court has subject matter jurisdiction of this action pursuant to 28 USC sec 1331 & 1343, because this action arises under the Constitution and laws of the United States; and
This Honorable Court has subject matter jurisdiction pursuant to 28 USC section 1343 because Plaintiff seeks to redress the deprivation, under color of state law, or rights, privileges and immunities secured to them by the Constitution and laws of the United States.

The Honorable Court has subject matter jurisdiction pursuant to 42 USC section 3612(a) because the Defendant's actions violate Plaintiff's federal statutory rights to fair housing.

This Honorable Court has jurisdiction pursuant to 28 USC sections 1331 and 1346 because Plaintiff seeks judicial review of the agencies actions or inaction under the Administrative Procedure Act, 5 USC section 706, to protect their rights under federal law.

Plaintiff's cause of action for declaratory relief is authorized by 28 USC section 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure; and there is no jurisdictional requirement as to the amount of damages claimed and as to counts in this Complaint which are based on state law are a basis for invoking the supplementary jurisdiction of this Court pursuant to 28 USC sec 1367a, and 42 USC 1441.

## FACTS

1. On 8/26/03 Erickson submitted a fully executed HUD 52517 form (Request for Tenancy Approval) signed by herself and her new Landlord Oliva of Winthrop, MA for a lease to commence on 9/1/03 including a fully executed CHA lease and HAP contract. The 3 contracts did give Oliva's telephone number. On 9/5/04 Oliva was refusing to give Erickson the key to her new apartment, and made some comment about the CHA told him not to rent to Erickson. Erickson sought

emergency relief in the Suffolk Superior Court and Judge Fabricant found "because of the CHA refusal to administer Erickson's voucher..." denying relief after a hearing but agreed not to pursue further redress if Oliva would reconsider.

2. On 9/4/03 CHA re-issued Erickson voucher but did not put an expiration date on the voucher as the voucher was issued during a "suspension period" pursuant to 24 CFR 982.54(d)(2) until such later time after Ms. Erickson Complained to Boston HUD offices of its mishandling of her voucher.

   a. *24 CFR 982.54 (a) that the PHA must adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements.*

   b. *24 CFR 982.54 (b) The administrative plan must be in accordance with HUD regulations and requirements the administrative plan is a supporting document to the PHA plan. The PHA must revise the administrative plan if needed to comply with HUD requirements.*

   c. *24 CFR 982.54 (c) The PHA must administer the program in accordance with the PHA administrative plan.*

   d. *24 CFR 982.54 (d): the PHA administrative plan must cover PHA policies on these subjects...(2) Issuing or denying Vouchers, including PHA policy governing the voucher term and any extensions or suspensions of the voucher term. "Suspension" means stopping the clock on the term of a family's voucher term after the family submits a request for approval of the tenancy. If the PHA decides to allow extensions or suspensions of the voucher term, the PHA administrative plan must describe how the PHA determines whether to grant extensions or suspensions, and how the PHA determines the length of any extension or suspension*

   *The Cambridge Housing Authority's Administrative Plan Part VII B 4. "If a family submits a request for lease approval, the term of the certificate/voucher will be suspended until the unit is either approved or disapproved. The "tolling" may also apply in the following circumstances:*
   *a). Family has filed a discrimination case against a potential landlord;*
   *b). Head of household is hospitalized;*
   *c). An accommodation through the ADA coordinator;*
   *d). Other extraordinary circumstances which are deemed by the Director or Deputy Director to be of a sufficient nature to raise an issue of fairness and therefore require additional time.*

3. On 9/5/03 the CHA informed Erickson that it would not administer her voucher in Winthrop, MA despite clear HUD policy. CHA faxed Erickson's HUD papers to the Revere Housing Authority for administration while denying Erickson full participation of her benefits.

4. In October (10/22/03) Erickson was informed that the Revere Housing would not process Erickson's voucher. Two days before and on 10/20/03 Erickson filed a MCAD complaint claiming housing discrimination and informed the CHA of same on the same date.

5. On 10/28/04 Erickson negotiated with another landlord in Allston, MA and told CHA that once she obtains the HUD paperwork back from this new landlord she would like CHA to administer it (the property was fairly close to CHA) but, instead CHA insisted on knowing the name and telephone number of this agent and informed her it would be unlikely that they would administer in Allston, MA. 3 days later the landlord was not interested in renting to Erickson despite its exaggerated interest and taking the HUD papers to fill-out days before. Erickson then filed a MCAD complaint and gave the copy to CHA. Throughout November and December Ms. Erickson was befriended by Janet Benoit a Nurse Practitioner who assisted Erickson with coping, and finding adequate housing

6. In early December CHA again informed Erickson they would not administer her voucher in Rockport, MA. Ms. Morrison agreed to rent her cottage in Rockport, MA. On Friday afternoon after the Housing Authority (HA) in Rockport had closed, Erickson tendered checks a HUD 52517 form (Request for Tenancy Approval), signed a lease to move in the following week while the HA

processed the paperwork. The following Monday Morrison informed Erickson that she had conversations with the HA and she would not rent to her.

7. In December, Erickson submitted another 52517 HUD form (Request for Tenancy Approval) for a property in New Braintree, MA and again CHA informed Erickson they would not administer it, Erickson instead filed it with Resources for Communities And People (RCAP) in Winchendon MA, who informed Erickson that they would contact CHA. The very next day Erickson overheard a message left for her landlords (Thomas) from an RCAP employee named Wendy Amenta informing the Thomas' that they should not rent to Erickson. RCAP refused to process Erickson's HUD paperwork; Erickson filed a complaint in the Boston Office of HUD and re-requested the CHA to administer the voucher it refused.

8. On 12/26/03 Erickson filed a complaint in the MCAD and on 12/28/03 in the Worcester Superior Court claiming discrimination committed by the Thomas'. Since Ms. Erickson was living in New Braintree, MA she was closer to Gilbertville, MA and requested that all correspondence be forwarded to P.O. Box in Gilbertville, MA as the Thomas' were taking her mail from her cottage mailbox.

9. While RCAP and CHA were refusing to process Erickson's HUD paperwork (Request for Tenancy Approval) Erickson filed a Complaint in the Boston office for HUD on or about 1/24/04. As a direct consequence to Erickson's complaint to HUD. CHA responded with a letter dated 1/29/04 prematurely terminating Erickson's voucher and describing that Erickson has 13 days of search time from the day that the MCAD decides her complaint or the Thomas' regain possession. But this letter of 1/29/04 was not pursuant to federal regulations and the calculation in error.

10. Immediately Erickson sent a request to the CHA for reasonable accommodations to extend the search time if necessary and notified the CHA that the expiration of her voucher was miscalculated. CHA refused to respond.

11. Again, on 2/2/04 Erickson sent a request challenging the determination to initiate tolling of her voucher prematurely. CHA refused to respond. Erickson resent the requests on 2/27/04 to no avail CHA refused to respond and completely denied her full participation in HUD's program.

12. On 2/29/04 Erickson signed a lease with a new landlord in Winthrop, MA identifying herself as a HUD voucher holder, and was informed that the landlords were out-of-town until after 3/10/04.

13. On 3/4/04 the landlord's agent contacted the CHA in an attempt to submit the HUD 52517 form (Request for Tenancy Approval) without the landlords signature. CHA's Director Johnston informed the landlord's agent not to rent to Erickson and discouraged his participation with Erickson as his tenant. But, on 3/12/04 Erickson spoke directly to her landlords and they signed the HUD 52517 form (Request for Tenancy Approval) and informed Erickson that they would fill out the remaining tax forms and submit these to the CHA on Monday 3/15/04.

14. On 3/15/04 the landlord's informed Erickson that the Director of CHA told them not to rent to Erickson, "don't give her the HUD papers", and "don't sign the HUD papers" and "Erickson's was a participant in the section-8 voucher program" and that "her voucher had expired".

15. Erickson immediately sought relief and requested a meeting with Wuenschel Executive Director of CHA, on 3/16/04, 3/18/04. On 3/16/04 Erickson then was told by Johnston that her voucher was

terminated due to the decision MCAD had made dismissing her Complaint, a decision that Erickson had not yet received as the MCAD sent the notice to the wrong address. Erickson requested an appeal/reconsideration of the CHA decision and then filed another request for reasonable accommodations. CHA denied all, no meeting, no hearing, and no accommodations.

16. After Erickson heard from Wuenshel that his decision was not favorable to Erickson, she then sought relief in the Middlesex Superior Court requesting a short order notice to return on 3/22/04 for a hearing on a temporary injunction as she wished not to have an exparte 10 day order to give the CHA a chance to reconsider its decision to prematurely terminate her voucher. Erickson also requested of the Superior Court an other hearing in 10 days time as she was not fully prepared to argue the preliminary injunction at that time or stage of the proceedings, she required the hearing for a temporary order as she was being deprived her benefits. Erickson is very concerned that the Massachusetts Trial Court would retaliating for her bringing suit against it and has suffered retaliatory abusive judicial decisions from numerous employees of the MA Trial Court and to which is the subject of current litigation in an associated case in this Federal District Court 03-cv-10460 and states that the relief she sought was retaliatorily denied and in the process she was abused.

17. As Erickson suspected her request for a short order was mishandled by the clerk instead of 3/22/04 the clerk mistook and wrote 3/24/04, and when she arrived at the rescheduled date 3/24/04 the Judge denounced her immediately. Erickson requested the Judge to read the Affidavit prepared that day by Dr. Fraser recommending to reduce the stress that are triggers for Erickson's seizures, and to allow her extended time to perform tasks. Immediately this judge tried to hurry Ms. Erickson, interrupting her every other word, refusing to read the memorandum of law in support of temporary relief and denied her to finish her argument or put her witnesses on to testify. The judge was very abusive and it appeared to be acting maliciously trying to excite Erickson into a seizure. Erickson was not yelling, or being disrespectful to the judge, or disrupting the court yet the judge called the court bailiff to remove Erickson before the hearing was ended all done with extreme malice. Erickson knew she would not be given a fair hearing but she didn't expect to be abused in the process. The judge denied Ms. Erickson's request and then stated that she would not set a date for a preliminary injunction where if Ms. Erickson had been entitled to she would have supported the record with much more evidence, from witnesses and records not obtainable prior to the hearing.

18. At the hearing the CHA attorney agreed that the CHA had spoken to Erickson's new landlord on 3/4/04 and again on 3/15/04, that the CHA refused to process Erickson voucher, that Erickson was a fully qualified participant holding a valid voucher issued by them on behalf of HUD but then claimed that CHA has mishandled the accounting on 41 HUD vouchers and that because of their mistake they should not be ordered to process Erickson's voucher "the CHA is over-budget".

## COUNT I
### RIGHT TO PRIVACY
### 42 USC sec. 1983
### VIOLATION of US CONSTITUTIONAL PROTECTIONS
(By Plaintiff against Defendants Wuenschel, Johnston and CHA)

19. Plaintiff re-alleges and alleges the allegations of paragraphs 1- 18 hereinabove and incorporates them by this reference as though fully set forth herein.

20. All at time relevant to the allegation of this Complaint, plaintiff had a reasonable expectation of privacy in her participation in HUD's Housing Choice Voucher Program under the circumstances. Plaintiff's personal file was not open to the public and Plaintiff did not consent it to be allowed public access.

21. At all times relevant to the allegations of this complaint, each and every act alleged herein was done by and in the name of defendant by Wuenschel, CHA and Johnston individually and through their agents, servants representatives, and each of them, under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of the Commonwealth of Massachusetts and of the United States. Defendants, and each of them, were clothed with the authority of the State and HUD and were purporting to act thereunder.

22. At all times relevant to the allegations of this Complaint, each and every act alleged herein done by Defendants Wuenschel, CHA and Johnston individually and through their agents, servants and employees, and each of them, were acting under a pre-planned agreement and as willful participants in a joint activity. When the Defendant Johnston openly gave information subject to the Constitutional protections of the 1st Amendment and the polices of HUD and those federal regulation and pursuant to the CHA Administrative Plan did so for the Defendants benefit. Defendant and each of them, unlawfully gave private information of plaintiff in violation of her constitutional rights. In doing so defendants fraudulently reported information that would and could terminally effect Plaintiff advantageous relationship and in doing so reported fraudulent facts in a manner to deny Plaintiff her rights of full participation in HUD's programs.

23. The acts of Defendants Wuenschel, CHA and Johnston individually and through their agents, servants and employees, and each of them, were clearly supported by the power, property and prestige of the State and Federal Government which imbued them with the power and prestige of Government officials. As a consequence individually and through their agents, servants and employees, and each of them, were acting under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of the United States and the Commonwealth of Massachusetts. Defendants, and each of them, were clothed with the authority of the Government and were purporting to act thereunder.

24. The action against Defendants Wuenschel, CHA and Johnston individually and through their agents, servants and employees, for violation of constitutional rights under color or authority of State law, is actionable under 42 USC section 1983.

25. Damages are an appropriate and judicially manageable remedy for an invasion of personal interests in liberty, for the case presents a focused remedial issue without difficult questions of causation and valuation, and there are no applicable special factors counseling hesitation in the absence of affirmative action by Congress.

26. On or about 3/04/04 and 3/15/04 while Defendants Wuenschel, CHA and Johnston and its employees and agents were reviewing Plaintiff's private file that they had control over under the color of law under a long-standing policy, custom and practice granted by HUD acting under the orders and authority of the color of law to administer its section-8 programs for qualified participants like Plaintiff. Defendant knowing gave out personal and confidential information that Defendants knew would harm Plaintiff's relationship with her new landlords. At no time did Plaintiff consent to or give permission to the defendants and their employees and agents to give private information out to whom ever called, but Plaintiff was informed by Defendants that it could

only give information out after it had received an executed Request for Tenancy Approval form from the person seeking information. If Plaintiff had known that the information would be indiscriminately available from defendants she would have caused a cease and desist order upon them prior to their dissemination and/or had not allowed the defendants agents and employees to disseminate private information and she would have demanded that the defendants and employee and agents not be allowed to disseminate private information about her. The Defendants, their employees and agents by their actions denied Plaintiff full participation in HUD's Housing Choice Voucher Program the protections of private information on participants and while denying her attempted to fraudulently procure and eviction without the due process of law, deny Erickson her rights of due process and to fraudulently and maliciously deprive Erickson her constitutional protections.

27. At no time did Plaintiff consent to or give permission to the Defendants Wuenschel, CHA and Johnston and its employees and agents to publish, disseminate or in any way in release private information contained in her file. Had Plaintiff known that the Defendants Wuenschel, CHA and Johnston individually and/or through its employees, servants and agents, and each of them intended to and had been allowed, ordered or otherwise unlawfully obtained private information and intended to publish same or release same Erickson would have demanded the Defendants not to do so.

28. Defendants Wuenschel, CHA and Johnston and its employees and agents were acting to disseminate private information for their mutual benefit in violation of Plaintiff's First and Fourth Amendment right to privacy. Said actions willfully exceeded the authority of the Defendants Wuenschel, CHA and Johnston and its employees and agents. Defendants Wuenschel, CHA and Johnston and its employees and agents individually and through their agents, servants and employees, and each of them personally participated in the deprivation of plaintiff's protected rights but also set into motion a series of acts by others which they knew or reasonably should have known would cause others to inflict constitutional injury upon Plaintiff, the loss of rights and benefits secured by the Constitution and other applicable laws.

29. Because of the above-recited facts, the Defendants Wuenschel, CHA and Johnston and its employees and agents individually and through their agents, servants and employees, and each of them, under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of HUD, the federal government, the intentions of Congress and of the Commonwealth of Massachusetts deprived Erickson of her rights, privileges and immunities secured to her by the United States Constitution, including, but not limited to:
    a. Plaintiff's Fourth Amendment right to privacy and security in her person, papers and effects, to be free against unreasonable government intrusions; and
    b. Plaintiff's right to be free in her person against unreasonable seizure of her papers and effects, to be free against unreasonable government intrusions.

30. The actions of each Defendant violated Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known.

31. The actions of Defendants impeded and hindered the course of justice with the intent to deny Plaintiff the equal protection of the laws.

32. As a direct and proximate result of the outrageous and wrongful acts of each of the defendants, plaintiff suffered loss of an advantageous relationship with her landlord and the loss of her HUD

housing benefits, mental anguish, and because of this interference is subjected to the loss of the security of her home. Plaintiff is reasonably assured that she is unable to realize the totality of the damages caused by the actions and inaction of Defendants as unforeseeable and once realized she should be allowed to amend.

33. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein.

34. The Defendants Wuenschel, CHA and Johnston and each of them acted willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's constitutional rights, federal regulations and the CHA Administrative Plan and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive and exemplary damages by way of punishing and deterring defendants in an amount of no less then 100,000.00 ($100,000.00).

35. The actions of Defendants, jointly, and severally, entitle Plaintiff to an award of exemplary and punitive damages.

**COUNT II**
RIGHT TO PRIVACY
Article 14th Mass. Constitution
Upon Defendants Wuenschel, Johnston and CHA

36. Plaintiff re-alleges and alleges the allegations of paragraphs 1- 18 AND 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

**COUNT III**
WRONGFUL DEPRIVATION
42 USC section 1983
Violation of Civil Rights
(Upon all Defendants)

37. Plaintiff re-alleges and alleges the allegations of paragraphs 1- 18 AND 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

38. All the Defendants and their agents and employees have, under color of law, deprived the Plaintiff of rights secured to her by federal statutes, regulations, and the United States Constitution by denying Plaintiff full participation in HUD's Housing Choice Voucher Program in violation of HUD' requirement, policies and federal regulations.

**COUNT IV**
WRONGFUL DEPRIVATION
42 USC section 1983
Discrimination in administration of government programs
(Upon all Defendants)

39. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

40. All the Defendants and their agents and employees have, under color of law, deprived the Plaintiffs of rights secured by federal statutes, regulations, and the United States Constitution by discriminating against her due to her disability and denying Plaintiff full participation in HUD's Housing Choice Voucher Program in violation of HUD's policies, requirements and federal regulations.

### CLAIM V
### DISCRIMINATION
### Violation of 42 USC section 1437f(o)(l)(A) and

42. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

43. All the Defendants and their agents and employees have, under color of law, deprived the Plaintiffs of rights secured by federal statutes, regulations, and the United States Constitution by discriminating against her due to her disability and denying Plaintiff full participation in HUD's Housing Choice Voucher Program in violation of HUD's policies, requirements and federal regulations.

### CLAIM VI
### DISCRIMINATION
### Violation of 42 USC section 12202 the Americans with Disabilities Act

44. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

45. All the Defendants and their agents and employees have, under color of law, deprived the Plaintiffs of rights secured by federal statutes, regulations, and the United States Constitution by discriminating against her due to her disability and denying Plaintiff full participation in HUD's Housing Choice Voucher Program in violation of HUD's policies, requirements and federal regulations.

46. Defendants have violated 42 USC section 12202 'Title II of the ADA as printed in the Federal Register (7/26/91)'. The Department of Justice's regulation implementing title II, subtitle A, of the ADA which prohibits discrimination on the basis of disability in all services, programs, and activities provided to the public by State and local governments, except public transportation services.

### CLAIM VII
### DISCRIMINATION
### Violation of Title VIII of the Civil Rights Act of 1968
### 42 USC sec. 3601 et seq.

Also known as the Fair Housing Act of 1988

47. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

48. Title VIII of the Civil Rights Act of 1968, 42 USC section 3601 et seq. also known as the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, makes it unlawful to make unavailable or deny a dwelling to any person because of among other factors, race, color, national origin or disability. 42 USC section 3604(a)(1).

49. Title VIII of the Civil Rights Act of 1968, 42 USC section 3608(e)(5), requires HUD and the PHAs to administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of the Fair Housing Act.

## CLAIM VIII
### DUE PROCESS
Violation of 42 USC section 1437f and grievance procedures secured by and required by HUD Policies and Procedures pursuant to 24 CFR 982.54, 982.5, 982.555.

50. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

51. The all the Defendants, by refusing to process Plaintiff's section-8 paperwork the Defendants and its illegal restrictions is arbitrary, capricious and otherwise not in accordance with law and should be set aside pursuant to the Administrative Procedures Act, 5 USC section 706(2), and violations of 42 USC section 1437f(r)(1), HUD regulations and HUD requirements and policies in the HUD Handbook.

52. By unlawfully denying Plaintiff a grievance hearing and/or its inaction to respond to numerous requests for reasonable accommodations and terminating Plaintiff's benefits by expiring her voucher the Defendants Wuenschel Johnston, and CHA have deprived Plaintiff her full participation in the section-8 program in violation of Title VIII of the Civil Rights Acts of 1968 and 1964 and have violated HUD's regulations, and the intensions of Congress.

53. By failing to advise Plaintiff of her rights to challenge the Defendants actions and or inactions. The Defendants have failed to affirmatively further the goals of fair housing in violation of Title VIII.

## CLAIM IX
### DUE PROCESS
42 USC sec. 1983
VIOLATION of 5th Amendment
Upon all Defendants

54. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

## CLAIM X
### DUE PROCESS
Violation of Article 14th Mass. Constitution
Upon all Defendants

55. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

## CLAIM XI
### EQUAL PROTECTION
42 USC sec. 1983
VIOLATION 14th Amendment
Upon all Defendants

56. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

## CLAIM XII
### DISCRIMINATION
Massachusetts General Law 151b et seq
Upon all Defendants

57. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

## CLAIM XIII
### CONSPIRACY
Upon all Defendants

58. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

## CLAIM XIV
### NEGLIGENCE
Upon all Defendants

59. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

60. All the Defendants breached the duty of due care they owed Plaintiff when, individually and through their agents, servants, and employees, and each of them, unlawfully disseminated information, negligently denied Plaintiff full participation in HUD's HCV IProgram and discriminated against Plaintiff in violation of federal laws, regulations and HUD' policies and requirements.

## CLAIM XV
### NEGLIGENT TRAINING AND SUPERVISION
Upon Defendants Wuenschel and Koller

61. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

62. The Defendants Wuenschel and Koller breached the duty of due care they owed Plaintiff when, individually and through their agents, servants, and employees, and each of them, unlawfully disseminated information about Plaintiff's and failed to train and supervise their employees so to avoid the breaches in due care.

## CLAIM XVI
### NEGLIGENT INFLICTION OF EMOTOINAL DISTRESS
Upon all Defendants
(By Plaintiff against all Defendants)

63. Plaintiff re-alleges and alleges the allegations of paragraphs 1-18 and 19-35 hereinabove and incorporates them by this reference as though fully set forth herein.

64. All at time relevant to the allegation of this Complaint, plaintiff had a reasonable expectation of privacy of her file held at the CHA under the circumstances. Plaintiff's file was not open to the public and Plaintiff has a copy of the CHA's Administrative Plan.

65. At no time did the Plaintiff give her permission, consent or authorization to the any of the Defendants, individually and/or through her agents to discuss anything in her file that was not made known to Plaintiff in the Defendant's Administrative Plan.

66. There was no consent that could be implied under the circumstances to allow any of the Defendants permission to disseminate information privately kept by them in Plaintiff's file.

67. The trespass by the Defendants, individually and through their agents, servants and employees, onto Plaintiff's private papers, and release of such private information to other third parties, was intentional and in reckless and willful disregard of Plaintiff's rights.

68. Defendants release of information kept in her private files at the Housing Authority was not by license nor right and/or authorization. The Defendants individually and through their agents, servants, and employees, and each of them, unlawfully released information about Plaintiff to make a damaging and knowingly and with purposely made to make a false impression.

69. At no time did the Plaintiff give her consent, permission or authorization for the release of information contained in her file that was not part of the CHA's administrative Plan or pursuant to federal regulations and HUD policies

70. By undertaking to release information on Plaintiff to private third parties under the auspices of government control Defendants, individually and through their agents, servants, and employees, and each of them, assumed or were imposed with owing a duty of care to Plaintiff.

71. The Defendants, individually and through their agents, servants, and employees, and each of them, intentionally and unlawfully deprive Plaintiff's her rights of privacy.

72. By the information disseminated by Defendants about Plaintiff was clearly identifiable and characterized Plaintiff in an embarrassing, humiliating and inflammatory manner. All done with the alleged consent, permission or authorization of the government.

73. It was reasonably foreseeable that the information released by Defendants of Plaintiff's privacy would cause Plaintiff emotional distress and tend to interfere with her subsidy and relationship with her landlords, the public and future landlords.

74. The Defendants, and each of them, knew or should have known that their release of private information on Plaintiff's would cause Plaintiff serious injury and emotional distress.

75. The Defendants breached the duty of due care they owed Plaintiff when, individually and through their agents, servants, and employees, and each of them, unlawfully disseminated information about Plaintiff's.

76. As a direct and proximate result of the intentional and negligent acts and/or omissions of the Defendants, individually and through their agents, servants and employees, and each of them, Plaintiff has suffered mental anguish and emotional and physical distress and has been injured in mind and body. Defendants' conduct resulted in emotional and physical injury and constituted a substantial invasion of a legally protected interest, that caused a significant impact, including emotional distress, interference with a good and advantageous relationship with her landlord(s) no reasonable person could be expected to endure it. Such emotional distress includes, but is not limited to, Plaintiff's suffering from grief, shame, humiliation, embarrassment, anger, chagrin disappointment and worry and from fear of the loss of home, security and the threat of homelessness.

77. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged herein.

78. As a direct and proximate result of the Defendants' conduct, individually and through their agents, servants and employees, and each of them, Plaintiff has suffered actual and consequential damages including, but not limited to, damage to real property, emotional distress, embarrassment, humiliation, loss of reputation, and loss of privacy. Plaintiff is entitled to recover for damages including, without limitation, mental anguish, emotional and physical distress, pain and suffering, humiliation and embarrassment to be determined according to proof at trial. The amount of damages will be to compensate for all detriment proximately caused thereby.

79. As a further direct and proximate result of Defendants' intentional infliction of emotional distress, plaintiff has incurred and will continue to incur special damages. The full amount of such damage is not known to Plaintiff at this time and Plaintiff will seek to amend this Complaint to state such amount when the same becomes known to Plaintiff or according to proof at trial.

80. Plaintiff is informed and believes and thereon alleges that Plaintiff will continue to suffer extreme mental, physical and nervous pain and suffering in the future as a result of the injuries alleged herein. The exact amount of damages is not known to Plaintiff at this time, and Plaintiff will move to amend this Complaint to state such amount when the same becomes known to Plaintiff or according to proof at trial.

81. The Defendants, and each of them, acted willfully, maliciously, intentionally, oppressively, and in wanton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands punitive exemplary damages by way of punishing and deterring Defendants in an amount of no less then one hundred thousand dollars ($100,000,00).

82. The actions of the Defendants, jointly and severally, entitle Plaintiff to an award of exemplary and punitive damages.

## CLAIM XVII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(By Plaintiff against all Defendants)

83. Plaintiff re-alleges and alleges the allegations of paragraphs 1- hereinabove and incorporates them by this reference as though fully set forth herein.

84. All at time relevant to the allegation of this Complaint, plaintiff had a reasonable expectation of privacy of her file held at the CHA under the circumstances. Plaintiff's file was not open to the public and Plaintiff has a copy of the CHA's Administrative Plan.

85. At no time did the Plaintiff give her permission, consent or authorization to the any of the Defendants, individually and/or through her agents to discuss anything in her file that was not made known to Plaintiff in the Defendant's Administrative Plan.

86. There was no consent that could be implied under the circumstances to allow any of the Defendants permission to disseminate information privately kept by them in Plaintiff's file.

87. The trespass by the Defendants, individually and through their agents, servants and employees, onto Plaintiff's private papers, and release of such private information to other third parties, was intentional and in reckless and willful disregard of Plaintiff's rights.

88. Defendants release of information kept in her private files at the Housing Authority was not by license nor right and/or authorization. The Defendants individually and through their agents, servants, and employees, and each of them, unlawfully released information about Plaintiff to make a damaging and knowingly and with purposely made to make a false impression.

89. At no time did the Plaintiff give her consent, permission or authorization for the release of information contained in her file that was not part of the CHA's administrative Plan or pursuant to federal regulations and HUD policies.

90. The said Defendants, and each of them, thereafter also spoke intentionally false and defametory words describing the private interior of Plaintiff's apartment, falsely described Plaintiff's cats as sick and diseased. And falsely spoke about a unlawful and purposeful ruse made by the local government upon Plaintiff.

91. The conduct of the said Defendants mentioned in the paragraph immediately above, individually and through their agents, servants, and employees, and each of them, was extreme and outrageous and was done with the intention of causing, or in reckless disregard for her privacy and their duty, they knew or should have known to be wrong and knew the probability of causing extreme emotional distress to Plaintiff.

92. As a direct and proximate result of the aforementioned facts, Plaintiff has suffered mental anguish, and emotional and physical distress, and has been injured in mind and body. Defendants' as mentioned in this section their conduct resulted in emotional and physical injury and constituted a substantial invasion of a legally protected interest, that caused a significant impact, including emotional distress so severe that no reasonable person could be expected to endure it. Such emotional distress includes, but is not limited to Plaintiff's suffering from grief, shame, humiliation, embarrassment, anger, chagrin disappointment, worry, loss of public respect, scorn and the loss of all of her good association with with her landlord and agent and the loss of personal dignity.

93. Plaintiff is entitled to recover any and all actual damage, in a sum to be determined according to proof at trial, proximately caused by the wrongful acts hereinabove complained of and alleged.

94. As a direct and proximate result of the Defendant's, as mentioned in this section, conduct, individually and through their agents, servants and employees, and each of them, Plaintiff has suffered actual and consequential damages including, but not limited to, damage to real property, emotional distress, embarrassment, humiliation and loss of privacy. Plaintiff is entitled to recover for damage to her property and other actual damages, including, without limitation, mental anguish, emotional and physical distress, pain and suffering, and humiliation and embarrassment, to be determined according to proof at trial. The amount of damages will be to compensate for all detriment proximately caused thereby.

95. As a further direct and proximate result of the Defendants' as mentioned in this section, intention infliction of emotional distress, Plaintiff has incurred, and will continue to incur special damages. The full amount of such damage is not known to Plaintiff at this time and Plaintiff will seek leave to amend this Complaint, to state such amount when the same becomes known to Plaintiff, or according to proof at trial.

96. Plaintiff is informed and believes and thereon alleges that Plaintiff will continue to suffer extreme mental, physical and nervous pain and suffering in the future as a result of the injuries alleged herein. The exact amount of damage is not known to Plaintiff at this time, and Plaintiff will move to amend this Complaint to state such amount when the same becomes know to Plaintiff or according to proof at trial.

97. The Defendants as mentioned in this section, acted willfully, maliciously, intentionally, oppressively, and in wonton and reckless disregard of Plaintiff's constitutional rights and the possible consequences of their conduct. Accordingly, Plaintiff is entitled to and hereby demands

punitive and exemplary damages by way of punishing and deterring Defendants in an amount of no less then one hundred thousand dollars ($100,000.00).

98. The actions of Defendants, jointly and severally, entitle Plaintiff to an award of exemplary and punitive damages.

PRAYER

The Plaintiff respectfully requests that this Honorable Court find in her favor on all counts against all Defendants as previously proposed.

Plaintiff respectfully prays for all statutory relief from this court allowing her dignity and liberty to be free from governmental oppression and grant her all other relief it deems fair and just.

Erickson requests a trial by jury.

I Heidi attest and sign here under the pains and penalties of perjury that the facts herein are true.

Respectfully submitted by:
Heidi K. Erickson, *pro se*
March 30th, 2004