UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-10629 DPW

HEIDI K. ERICKSON
    Plaintiff

V.

DAVID SOMERS, NORMA SOMERS
CRAIG SOMERS, DANIEL WUENSCHEL ET. AL.
    Defendants

VERIFIED MOTION OR IN THE ALTERNATIVE REQUEST FOR CLARIFICATION ON ORDERS ISSUED ON MAY 5th, 2004

1. Plaintiff respectfully requests that this Honorable Court issue a clarification on it's Orders issued on May 4th, 2004, specifically "directing" and/or "Ordering" Plaintiff Heidi K. Erickson to "demonstrate good cause why she should not be ordered to pay a sanction of at least $150.00 to this Court." as confusing and/or maybe confusing to her due to her dyslexia, in either case Ms. Erickson is profoundly confused why this Honorable Court keeps misstating issues of facts despite the evidence presented attached as exhibits in her pleadings unless there is discrimination, biased and or plain error as explained hereinbelow.

2. The "directing" and/or "Orders" then follow a reference to a case cite and then includes a footnote that in this case the plaintiff was sanctioned $150.00 for filing intentionally false financial affidavit. Accordingly, this Court states that *"Because I know have serious concerns about the truthfulness of Plaintiff's assertions of poverty, I will direct Erickson ..."* Erickson is left in the dark and confused why His Honor is referring to her in this light. Erickson contends that all the responses from Judge Woodlock have demonstrated severe and several errors especially this one and in his original findings of fact. All of these judicial responses inappropriate. These being:

    a. First, stating Erickson has litigated this issue in at least 3 other courts and that this alone caused her Complaint to be summarily dismiss under the doctrine of *Rocker-Feldman* is plainly unfounded and no where to be found as a fact!

    b. Second, Woodlock erred in finding Erickson not disabled according to the definitions promulgated by the Americans with Disabilities Act (ADA) while this Honorable Court has found Erickson disabled in previous litigation but especially so in this case where Erickson claimed that the Housing Authority (Cambridge Housing Authority) while discriminating against her knowingly and as proof she is disabled (according to the definitions established in the ADA) attached as evidence a previously processed ALLOWANCE FOR REASONABLE ACCOMMODATIONS issued from the Cambridge Housing Authority on 4/1/03, well over a

1

year before this cause of action where the CHA admits that Erickson is disabled according to the ADA. But His Honor failed to either read that and/or purposely ignored it then makes a finding that Erickson has no standing because she seek monetary damages! Nowhere Erickson claims money damages, only equity in her requested preliminary injunctions. Woodlock's findings should be subject to investigation.

    c. Third and most importantly Woodlock erred by determining Ms. Erickson's *pro se* Amended Complaint "as replacing her Complaint" and judicial notice of this fact should have been furthered in Woodlock's findings as Ms. Erickson maintains the Amended Complaint she filed only amended while relying upon the Complaint and any cause to consider her Amended Complaint any less than not what she intended and certainly should be made to be corrected as the Amended Complaint excludes several claims elaborated in the original Complaint because it only relied upon it and did not replace the Complaint. One of the most important claims not listed in the Amended Complaint but clearly listed in the Complaint was that of 42 USC section 1983 claims of deprivation of rights secured by Congress i.e. Fair Housing, and those benefits promulgated by the Fair Housing Act as amended. Ms. Erickson points to her Amended Complaint first sentence at paragraph 1: *The Plaintiff Ms. Heidi K. Erickson hereinafter "Erickson" relies upon her previously filed Verified Complaint incorporating it herein and amends hereto by the following:...*

    d. Lastly claims of irreparable injury (see herein paragraph 7) and likelihood of success (see herein paragraph 8) and her claims for a right to litigate violations in federal regulations by a housing authority (see herein paragraph 3) and to enjoin a Summary Process action for none-payment of rent a legal theory that this Court refuses to afford Ms. Erickson because of local bias and discrimination due her sometimes difficult to read pleadings – difficult only because of her disability of dyslexia impairing a pro se's writings (see paragraph 2a-d herein regarding the misstated facts and judicial errors).

3. While Ms. Erickson points to similar and yet supportive cases heard in this jurisdiction, where the Plaintiff argued and the Federal District Court found the cause of action upon the Public Housing Authority under 42 USC section 1983 issuing a TRO, preliminary injunction and other forms of relief upon the Housing Authorities because of its deprivations of benefits and lack of affirmative action promulgated under the Fair Housing Act citing *Langlois et al v. Abington Housing Authority et al*, 234 F. Supp. 2d. 33; 2002 U.S. Dist. Lexis 22935; Civ. Action No. 98-12336-NG, decided

11/27/02. Ms. Erickson states that there is little difference between the legal theories of her case and those that were raised in the *Langlois* court. *Supra*. (SEE TEXT IN FULL, ATTACHED ESPECIALLY PG 21, 1. THE BLESSING TEST §1983 STATUTES AND "RIGHTS".)

## CLARIFICATION

4. Herein Ms. Erickson seeks clarification on the "direction" and/or Order appearing in Judge Woodlock's ORDER ON MOTION FOR RECONSIDERATION, AMENDED MOTION FOR PRELIMINARY INJUNCTION, AND EMERGENCY VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER issued on May 4th, 2004 as follows:

    It appears that the "direction" and/or Orders were premised by referring to Docket entry 11 (Affidavit paragraph 6) in forma pauperis. And *"Yet in her recently submitted affidavit in support of her motion for a preliminary injunction, Erickson attempts to establish irreparable harm by claiming that she has spent nearly $1600.00 on improvements to the rental property at issue here, an assertion that appears completely at odds with the allegations of poverty in her application to proceed in forma pauperis"*.

5. FIRST citing above Erickson asks that this Court clarify what it has found *"completely at odds with the allegations of poverty in her application to proceed in forma pauperis"* by referencing each of Ms. Erickson's allegations and who it is in conflict with the federal statutes pertaining to her ability to proceed in forma pauperis.

6. Erickson argues nothing in her motions, affidavits and any pleading could be completely at odds" stating this Court has either misunderstood her pro se dyslexic writings and/or the statutes themselves. In addition, current poverty threshold (income for a single individual that is less then $13,000.00 annually) is annually established by the Federal Guidelines pursuant to Section 625 of the Economic Opportunity Act, as amended 42 USC 2971 (d) delineates that if a Petitioner's income over the last 12 months is less then 125% of the "current poverty threshold" Petitioner qualifies as indigent. Ms. Erickson attested to income from unemployment insurance of approximately <$2200.00 over the last 12 months but as of today would <$1200.00.

7. Ms. Erickson states her "IRREPARABLE HARMS/INJURY" Judge Woodlock repeatedly diminishes in importance by misstating the facts (See His Denials of TRO, Denial on Motion For Preliminary Injunction and those denial associated with Ms. Erickson's Reconsiderations this pleading's seed) refers to her loss of housing and the direct threat to her life and safety not her investment that she invested time and purchases of materials valued in excess of $1600.00. The

3

threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunction relief. Courts have held even where the low-income housing shortages are less acute, courts have found and held that the threat of eviction constitutes a threat of "irreparable injury". *Mitchell v. United States Department of Housing and Urban Development*, 569 F.Supp. 701 (N.D.Cal. 1983), for example, the likelihood of eviction coupled with the slight prospect of finding alternative, affordable housing was held to constitute sufficient threat of irreparable harm to enjoin eviction temporarily. (See also *Tenants for Justice v. Hills*, 413 F. Supp. 389, 393 (E.D.Pa. 1975); *Owens v. Housing Authority of City of Stamford*, 394 F.Supp. 1267, 1271 (D.Conn. 1975).

8. The second prong is the likelihood of success, albeit important, is considered with less weight necessary to be calculated into this equation as Erickson's threat of harms hefty constituting tipping the scales in favor of granting the Preliminary Injunction and/or relief Erickson seeks; is satisfied by the two facts that are and/or were established early on. The first undisputed facts Erickson was issued a Section-8 voucher through the CHA and a Reasonable Accommodation Allowance, it is also left undisputed that the CHA through Michael Johnston instructed Ms. Erickson's landlord's "not to file the HUD paperwork" see Affidavit Michael Johnston at paragraph 5 and that Affidavit Richard Fraser, MD attests to Ms. Erickson disability and requests for extensions of time on completing timed task i.e. like filing HUD paperwork on a certain date. The second is a set of disputed facts Ms. Erickson claims her voucher has been prematurely terminated following a series of violations to the federal regulations specifically 24 CFR 982.54(d)(2) and CHA own policies (which are not under dispute) together with CHA's claims that Ms. Erickson's voucher expired on March 13th, 2004 (which is a Saturday) that cannot expire on a day that the public housing office is closed. CHA's claims are is highlighted by a rather important fact that CHA attested statement found in Affidavit Michael Johnston at paragraph 4 and 5 claiming to have conversations with Erickson landlords prior to CHA's claims that her voucher had expired and on the date it could have expired coupled with the fact that Erickson's landlord signed the HUD paperwork i.e. HUD 52517 form (Request for Tenancy Approval form) on March 12th, 2004 which is a Friday and was trying to submit it on Monday March 15th, 2004 the day CHA attested to the fact that it told the landlord "hold on to the HUD paperwork". There are several issues that should be presented to the finder of fact and/or a jury, and that these facts could not and should not be summarily dismissed

9. The Federal Court may preserve the *status quo* pending issuances of Summons, granting a Preliminary Injunction or grant other forms of interim relief, but this ordinarily requires a showing

4

of likelihood of success as well as a balance of equities and public interest considerations tipping in favor of such relief. *Coalition for Basic Human Needs v. King*, 654 F. 2d 838, 842-43 (1st Cir. 1981) (*per curiam*). Furthermore, the greater the irreparable harm shown by the Plaintiff, the lower her burden is with respect to success on the merits. "[C]onsideration of movant's likelihood of success on the merits, potential for irreparable harm, balancing of relevant equities, and effect on public interest." *Campbell Soup Co. v. Giles*, 47 F. 3d 467 (1st Cir. 1995); see, e.g., *Kaalski v. Chicago Tribune Co.*, 854 F. 2d 168, 170 (7th Cir. 1988)(stating that a request for a preliminary injunction is evaluated in accordance with a "sliding scale" approach: the more the balance of irrevocable harms inclines in the Plaintiff's favor, the smaller the likelihood of prevailing on the merits need shown in order to get the injunction).

10. Ms. Erickson attested to the fact that she has invested her time of well over 250 hours during the first 2 months of her new tenancy enriching the landlords complying to their agreements and investing in her future home. If one were to calculate the cost and or dollar amount of Ms. Erickson's labor at the rate of minimum wage approximately $6.00 an hour the figure of Ms. Erickson's cost/investment would be $1500.00 plus the materials in excess of $100.00 for direct purchases and others replaceable at approximately $500.00 and a washer-dryer at nearly $1000.00.. But if you calculate the rate that Ms. Erickson should be compensated for her labor based on her life experiences and education (Harvard undergraduate and graduate education, University of Chicago, NorthWestern and University of California) her expected rate of compensation and/or investment is well over $100.00-$200.00 per hour totaling well over $25,000.00 invested.

11. Erickson contends that this Court has repeatedly failed to apply the legal theories fairly in any of her cases, herein included. Pointing to her claims that the CHA (Public Housing Authority) repeatedly failed to "affirmatively further" the Fair Housing Act by its actions which tended to discriminate against Ms. Erickson while in the fall of 2003 evidence by submissions that the CHA failed to suspend her voucher despite the MCAD investigation of Oliva's action (no final decision yet has been reached by the MCAD and the CHA was not named a party in the action of discrimination See Memorandum of Law In Support of Preliminary Injunction paragraph 15 pages 3-4.) the obligation to affirmatively further the fair housing act is an obligation that paragraph 15 in the Memorandum just cited evidences of the repeated failure and disparate treatment Ms. Erickson suffered at the hands of the CHA over months the obligation to "affirmatively further" fair housing gave rise to a plausible claim of a Title VIII, 42 USCS section 3608 (e)(5) violation. Courts recognize he obligation as enforceable under 42 USCS section 1983. The US HUD regulations

5

give content to the provision, spelling out specific ways in which a public housing authority (PHA) is supposed to affirmatively further fair housing. *Langlois* court 234 F.Supp2d.33 (D.Mass). Further spelling out that 24 CFR 982.53(c) provides that the PHA have an independent obligation to affirmatively further fair housing, and 24 CFR 903.7(o)(3) sets out with precision just what PHA's must do in order to be deemed in compliance.

12. Looking back through Erickson's pleadings in this case alone she supplied this Court with evidence of noncompliance; evidence of the numerous times the CHA has miscalculated her voucher "suspension periods" pursuant to 24 CFR 982.54(d)(2) etc.; evidence of her disability uncontested by CHA and recognized by it (See Memorandum of Law In Support of Preliminary Injunction paragraph 23 pages 5.) 'Allowance of Reasonable Accommodation' issued 4/2003 prescreened by HUD according to the definitions of the Americans with Disabilities Act and support by affidavits and letters from several doctors. Despite this evidence trail CHA and this Court had repeatedly ignored Erickson multiple requests to be heard. While this Court followed suit in a biased, vile and unjustified manner that should prompt investigation one only needs to look at any other of those cases Judge Woodlock cites in his Orders issued on 5/4/04 and one will find similarities in the screwed nature of judicial review and evidence supplied to support the claims. See for example Erickson v. Harvard et al. Erickson attested to the fact and supplied evidence of her pay-stubs issued after the incident she claimed relief while the Court ignored those facts and issued findings that she had no standing. The Court was in gross biased error as she had an inherent standing, while this court has an inherent bias to Erickson who named Harvard University as a Defendant during an era while Margaret Marshall stood as General Counsel, who now stands as Chief of the Supreme Judicial Court and who invites all Federal judges to her parties.

THEREFORE, this Court should not be responsible to hear Erickson's claims as local bias is apparently obvious and it should grant Ms. Erickson the relief she has requested i.e. for clarification and immediately order the removal of this case to the 4th Circuit pending the Appeal and/or recommend the removal to the 1st Circuit removable to the jurisdiction of the 4th Circuit.

Respectfully submitted by:

Heidi K. Erickson, *pro se*
June 14th, 2004

*I sign herein attesting that the above paragraphs are true under the pains and penalties of perjury. By signature herein I have caused a copy of this Document to be served upon the Defendants and/or their attorneys.*

6