UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 OCT 26  P 2: CIVIL ACTION NO 04-10629 DPW

HEIDI K. ERICKSON
Plaintiff

U.S. DISTRICT COURT
DISTRICT OF MASS.

VS.

RECONSIDERATION OF ORDER ON MOTION
FOR PRELIMINARY INJUNCTON
AS PER NEW DEVELOPMENTS

DANIEL WUENSCHEL, et al.
Defendants

1. Plaintiff/Tenant/Appellant relies upon her Reconsider of Order on Motion for Preliminary Injunction filed in April 2004 pointing out the progressive errors in Judge Woodlock's findings. In addition Ms. Erickson relies upon all other Reconsiderations filed in this case and announces that on October 13th, 2004 the Cambridge Human Rights Commission, pursuant to MGL 151b found and issued a DETERMINATION OF PROBABLE CAUSE (Ex. 1) finding discrimination as it related to the actions of the Cambridge Housing Authority and the processing of Ms. Erickson section-8 housing voucher the means and manner to pay her rent and since the underlying case is from a summary process 'eviction' for non-payment of rent **exclusively** this 'new development' dispositive to this case.

2. As a result of the above-mentioned findings the jurisdiction supported by an independent investigation references Section 804f3B of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

3. Plaintiff/Tenant/Appellant Ms. Erickson relies upon her previous RECONSIDERATION and the new information found in the Cambridge Human Rights Commission's finding (Ex. 1) upon an investigation triggered by Ms. Erickson to the FAIR HOUSING Division of the United States Department of Housing and Urban Development (HUD) requested and complaint filed in June by Appellant prior to her eviction in the underlying Summary Process case upon which this case stems.

4. Plaintiff/Tenant/Appellant Ms. Erickson gave Notice of Appeal, and on 10/19/04 the First Circuit Denied a Request/Motion for Oral Argument, on October 26th, 2004 the Appellant filed a Motion Requesting an Extension of Time to file a Response Brief due to this herein new development or in the alternative a Stay pending the District Court Reconsideration.

5. Therefore this RECONSIDERATION request filed in good faith, as the horizon has changed while Appellant's merit in the underlying denial substantially fortified by the Human Rights Commission's findings of October 13th, 2004.

6. In addition, Plaintiff/Tenant requests a Stay, 'Orders to Stay rental of the subject premises 'Cottage' in the underlying case for possession, and the premises for which the HUD section-8 voucher and fully executed HUD form 52517 rely. Ms. Erickson states that the subject premises has not been re-rented and that she is homeless.

7. Ms. Erickson states that the subject premises unique and that the Landlords don't rely on the rental income to support themselves. In addition, Ms. Erickson states only due the denial of Waiver of the Appeal Bond now awaiting briefing to the full bench of the Supreme Judicial Court in Somers v. Erickson SJC 04-9336 a Review on a Denial of a Waiver to the Appeal Bond she would still be in said premises.

8. This Honorable Court may preserve the *status quo* pending appeal or grant other forms of interim relief, but this ordinarily requires a showing of likelihood of success as well as a balance of equities and public interest considerations tipping in favor of such relief. *Coalition for Basic Human Needs v. King*, 654 F. 2d 838, 842-43 (1st Cir. 1981) (per curiam).

9. Furthermore, the greater the irreparable harm shown by the moving party (herein Defendant), the lower her burden is with respect to success on the merits. The more foreseeable the movant's ultimate success on the merits, the less weight the Court accords the Respondent's (Landlord's) prospective loss. *SEC v. World Radio Mission*, 544 F.2d. 535, 541 (1st Cir. 1976). The Tenant here has met these standards in addition to the fact that she has lost possession and is not living in said unit. The status quo could be maintained with little loss to the Landlord pending appeal especially if one considers the harms in light if Tenant wins the underlying Appeal and wins the possession after a trial *de novo* if the landlord re-rents her cottage to another party.

10. The standards for an injunction pending appeal are the same as a preliminary injunction, namely "consideration of movant's likelihood of success on the merits, potential for irreparable harm, balancing of relevant equities, and effect on public interest." *Campbell Soup Co. v. Giles*, 47 F. 3d 467 (1st Cir. 1995); see, e.g., *Kaalski v. Chicago Tribune Co.*, 854 F. 2d 168, 170 (7th Cir. 1988)(stating that a request for a preliminary injunction is evaluated in accordance with a "sliding scale" approach: the more the balance of irrevocable harms inclines in the movant's favor, the smaller the likelihood of prevailing on the merits need shown in order to get the injunction).

11. This Court is only required to determine whether the movant has at least one defense that is non-frivolous to be heard at a trial *de novo* to be granted her waiver of the appeal bond, not the wisdom of the decision or actions of the Judges to making the decision to deny her a waiver of her appeal bond.

12. This Court should grant a preliminary injunction in favor of the Movant - Tenant where: (a) the Tenant will suffer injury if the injunction is not granted; (b) such

injury outweighs any harm which granting injunctive relief would inflict on the Respondent/Landlords; (c) the Movant Tenant has exhibited a likelihood of success on the merits, and; (d) the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d.1066, 1009 (1st. Cir. 1981); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d. 4, 5 (1st Cir. 1991). In balancing the elements of this test, the Movant is entitled to the relief she seeks if:

> The harm caused tenant without the injunction, <u>in light of</u> the tenant's likelihood of eventual success on the merits, outweighs the harm the injunction will cause Landlords'

*United Steelworkers of America v. Textron, Inc.*, 836 F.2d. 6, 7 (1st Cir. 1987), citing *Vargas-Figueroa v. Saldana*, 826 F.2d. 160, 162 (1st Cir. 1987) (emphasis original). The more foreseeable the Tenant's ultimate success on the merits, the less weight the Court accords the Landlords' prospective loss. *SEC v. World Radio Mission*, 544 F.2d. 535, 541 (1st Cir. 1976). The Tenant here has met these standards and in regards to the public interest the Massachusetts law against discrimination make the public interest paramount, together with those interests to prevent homelessness one points to the programs and Acts that Congress has enacted including the Fair Housing Act, the Attorney General's regulations against discrimination in housing one such societal concerns that has driven legislators to committee to laws that oppose and funds to foster self reliance and abolish homelessness.

16. Did the Public Housing Authority deprive tenant the use of her benefits, in a not all inclusive to a nondiscriminatory atmosphere, but by its lack of affirmative action while assisting the landlords in their discriminatory refusal to process HUD paperwork and a wrong constituting injury that irreparably harms Tenant from the loss of her housing voucher.

17. Federal District Court, Judge Nancy Gertner in *Langlois vs Abington Housing Authority* 234 F. Supp. 2d. 33 decided on Nov. 27, 2002 (Exh 2) finding that the Public Housing Authorities have an independent obligation to affirmatively further fair housing pursuant to 24 CFR 982.53(c). Further Judge Gertner found that 42 USC 3608 (e)(5) places an affirmative obligation on the Secretary of the United States Department of Housing and Urban Development to ensure that the public housing authorities (CHA) comply with civil rights laws. This obligation is embodied in the statutory provisions that require the PHA to certify its compliance, 42 USC 1437 c-1(d)(15) while 24 CFR 982.53(c) confers on the PHAs an independent obligation to affirmatively further fair housing themselves. Moreover, 24 CFR 903.7 (o)(3), incorporated by reference into section 982.53(c), explicitly lists precisely what steps PHAs have to take in order to be considered in compliance with their obligations.

18. The Landlord actions discriminatory, as he "would not take a section-8 voucher and encouraged his wife not to submit the papers she had processed. The landlords did not act according to their promises in regards to the tenancy and prevented the use and/or payment of a subsidy for rent and has caused the voucher to expire. In addition but more importantly they (the Landlords' blamed their actions (refusal to

submit the HUD paperwork aka HUD 52517 form 'Request for Tenancy Approval' to the Cambridge Housing Authority "BECAUSE Cambridge Housing Authority told us not to" see Tr. pg. ln

THEREFORE

The Reconsideration filed in GOODFAITH and request herein are reasonably applied to the circumstances and new developments.

RESPECTFULLY SUBMITTED BY

Heidi K. Erickson, *pro se*
*I attest that the information herein is true under the pains and penalties of perjury.*
*October 26th, 2004*

*I Heidi K. Erickson attest that ___ day of Oct04 have sent a message in person by leaving a voice mail message including*

I Heidi K. Erickson, attest that I have made service of this document by facsimile transmission upon the attorney for the Plaintiffs John Egan and Finestein for RCAP.

 

# CITY OF CAMBRIDGE
## Cambridge Human Rights Commission

51 Inman Street, Second Floor - Cambridge, MA 02139
Telephone: (617) 349-4396 • Fax: (617) 349-4766
TTY/TDD: (617) 492-0235

*Quoc M. Tran, Esq.*
*Executive Director*

DATE:  October 13, 2004

Heidi Erickson
Harvard Square Post Office
P.O. Box 0444
Cambridge, MA  02238

Carrie Campion, Esq.
Posternak Blankstein & Lund
800 Boylston Street
Boston, MA  02199

RE:  Erickson v. Cambridge Housing Authority
     CHRC No.   04-HH-44
     HUD  No.   01-04-0297-8
     MCAD No.   04-BPH-01951

### DETERMINATION OF PROBABLE CAUSE

Dear Parties:

Please be advised that a Determination of Probable Cause has been made in the matter referred to above. This means that our investigation of the complaint filed by the Complainants did reveal sufficient evidence of an unlawful act of discrimination. A copy of the Determination of Probable Cause is enclosed herewith.

#### NOTICE OF RIGHTS

Also enclosed is a notice of your rights. You will be required to make a timely election concerning removal to state court. Please read the attached document carefully.

## PROBABLE CAUSE DETERMINATION

CASE NAME:      Erickson v. Cambridge Housing Authority
CHRC NUMBER:    04-HH-44
MCAD NUMBER:    04-BPH-01951
CASE NUMBER:    01-04-0297-8

I.  JURISDICTION

A complaint was filed with HUD on June 16, 2004 alleging that the complainant(s) was injured by a discriminatory act. It is alleged that the respondent(s) was responsible for: failure to make reasonable accommodation. It is alleged that the respondent(s)'s acts were based on handicap. The most recent act is alleged to have occurred on March 24, 2004. The property is located at: Cambridge, MA 02139. The property in question is not exempt under the applicable statutes. If proven, the allegation(s) would constitute a violation of Cambridge City Ordinance 14.04, Massachusetts General Laws, ch. 151B, Section 4, and Section 804f3B of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

The respondent(s) receive federal funding in the form of:

Public and Indian Housing

The complainant has also alleged violations of Section 504 of the 1973 Rehabilitation Act; and the Americans with Disabilities Act of 1990 by the respondent(s).

II.  COMPLAINANT ALLEGATIONS

Complainant states she is disabled. Complainant alleges that she requested a reasonable accommodation asking that she be allowed additional time, beyond the time that is allowed under the rules and regulations of the Section 8 voucher program, to complete her search and the paperwork required. Complainant claims that the 13-day deadline set by the Respondent has created unnecessary stress triggering an increase in frequency of seizures, and constitutes a failure to accommodate her disability.

III.  RESPONDENT DEFENSES

Respondent Ann Fahey stated that she gave full consideration to Complainant's reasonable accommodation request. She did not dispute that Complainant has a disability. However, pursuant to Respondent's regular procedure, she determined that the required connection did not exist between the Complainant's disability and the reasonable accommodation request which she made. She determined that Complainant's disability had not prevented her from searching for housing during

the relevant time period. In fact, the nurse practitioner who presented documentation in support of Complainant's request provided a detailed accounts of Complainant's extensive efforts to find housing.

## IV.   FINDINGS AND CONCLUSION

Respondent denied Complainant's reasonable accommodation request which they claim was first made on March 19, 2004, by a letter dated March 24, 2004. The letter stated two bases for the determination that there was no connection between Complainant's disability and the request for reasonable accommodation. These were: 1. If Complainant was claiming that her disability interfered with her ability to perform housing search activities, the letter from her nurse clearly indicated that she was able to do so; 2. If Complainant was claiming that her disability made it difficult to deal with landlords after a tenancy was established, that is outside Respondent's purview. Respondent Ann Fahey claimed that she conducted her review of Complainant's request according to her usual procedure and with the necessary thoroughness.

The evidence indicates that Respondent's review of Complainant's reasonable accommodation request was inadequate in the following ways:

1. Although Ms. Fahey indicated that Complainant's medical documentation was not adequate to establish a nexus between the request and the disability, she did not request additional documentation. Additional documentation which more fully explained the symptoms of Complainant's disability could have established a nexus between her disability and her request for more time to perform her housing search. For example, when interviewed, Complainant's doctor indicated that Complainant's disability is aggravated by stress, making the search process more difficult for her than for people without her disability.

2. Ms. Fahey did not communicate adequately with Complainant during the time she was considering the request. Ms. Fahey stated that when she receives a reasonable accommodation request, she usually has a conversation with the person to determine what exactly they are requesting and to address any other issues. She claimed that she spoke to Complainant briefly on the phone. However, she could not find any record in the file of such a conversation, or any notes regarding the topics of conversation. Also, Complainant denied that she ever spoke to Ms. Fahey during the relevant time period. Even if a brief conversation took place, it apparently was not adequate. There is no evidence that Complainant had the opportunity to respond to any of the concerns which prompted the eventual denial of the request, or to present additional documentation. There is no evidence that anything resembling an interactive process was entered into at any time between the day the request was made and the day the decision was rendered.

3. The review process was brief and apparently cursory. As previously stated, Complainant was not asked for additional documentation, was not

respond to any of Respondent's concerns. In addition, the evidence indicates that the finding was not reviewed by anyone at CHA except Ms. Fahey, either before or after it was issued. Ms. Fahey stated, also, that there is no appeal process available for Section 8 recipients such as Complainant.

4. Complainant may have presented accommodation requests between January 29, 2004 and March, 2004 which were ignored by Respondent. Mr. Johnston stated that he had no record of written reasonable accommodation request, and did not remember speaking to the Complainant about the subject prior to March 19. However, Complainant alleged, and presented copies of two letters to corroborate, that she requested reasonable accommodation several times prior to March 19, 2004, when the Respondent claimed they received her first request. She claimed that the first request was a letter faxed to Michael Johnston, the CHA's Director of Leasing and Occupancy on January 29, 2004, the same day Mr. Johnston sent her a letter denying her request for an extension. She also presented a copy of another letter which is dated February 2, also addressed to Mr. Johnston which reiterates her request for reasonable accommodation. If Complainant did indeed request reasonable accommodation prior to March 19, 2004, Respondent's contention that she did not take action before the expiration of her voucher is invalid.

5. The review of Complainant's request did not consider other valid bases for finding a nexus between her disability and the reasonable accommodation request. As stated in Ms. Fahey's letter she considered two bases for finding a nexus: 1. whether Complainant was unable to search for housing due to her disability and 2. whether Complainant was unable to deal with landlords after they had agreed to rent to her.

However, there are at least two other valid grounds on which a nexus can be found. The first is whether Complainant's disability prevented her from *successfully* searching for housing. The Complainant's doctor stated that stress which can be caused by time pressure exacerbates Complainant's condition and increases the possibility that she will fly into irrational rages which are a symptom of her disability. During this investigation, being told of a deadline which she considered unreasonable triggered an outburst of irrational anger in Complainant, despite her reasonable behavior under other circumstances. Observing this kind of behavior could clearly deter a landlord from renting to Complainant.

The second possible basis for finding a nexus is that the time pressure of the tight deadline in itself aggravates her disability. This is a valid consideration on its own. The letter from Jan Benoit, Complainant's medical documentation, states that Complainant is under considerable stress and implies that the housing search process is adding to that stress. When interviewed, her doctor also stated that stress from the various factors in her life, including the housing search, was causing severe symptoms in Complainant, including increased seizure activity, insomnia, panic attacks and even heart trouble.

For the above reasons, the investigation revealed that the procedure which the CHA followed in denying Complainant's reasonable accommodation request did not provide her with a meaningful opportunity to have her request fully considered. Therefore, this Commission finds that probable cause exists for crediting Complainant's allegations of failure to reasonably accommodate her disability.

V.  ADDITIONAL INFORMATION

Notwithstanding this determination by HUD, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the respondent requests that no such release be made. Such request must be made by the respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from:

Cambridge Human Rights Commission
51 Inman Street, 2nd Floor
Cambridge, MA 02139
(617) 349-4396

_____         10/13/04
Sonja DeWitt                             Date
Fair Housing Coordinator

_____         10/13/04
Quoc Tran                                Date
Executive Director

_____         10/13/04
Investigating Commissioner               Date